## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

H&M COMPANY, INC.,

      Plaintiff,

      v.

TECHNICAL HEAT TRANSFER
SERVICES, INC. and
ATLANTIS EQUIPMENT CORPORATION,

      Defendants.

Civil Action No. TDC-14-1518

### MEMORANDUM OPINION

This matter is before the Court on separate Motions to Dismiss filed by Defendant Technical Heat Transfer Services, Inc. ("THTS"), ECF No. 10, and Atlantis Equipment Corporation ("Atlantis"), ECF No. 31. The issue before the Court is whether the Complaint sufficiently states claims for breach of implied warranty, breach of express warranty, negligence, and negligent misrepresentation arising from the design and provision of heat exchanger equipment that failed to perform as promised. The Court has reviewed the Complaint and briefs and has determined that no hearing is warranted. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, the Motions to Dismiss are GRANTED IN PART and DENIED IN PART.

### BACKGROUND

Plaintiff H&M Company, Inc. ("H&M"), a general contractor incorporated in Tennessee, contracted with Mirant Power to provide certain heat exchanger equipment (the "Equipment") for installation at a power plant in Newburg, Maryland (the "Project"). Compl. ¶¶ 1, 7, ECF No. 1. H&M then entered into a subcontract with T.J. O'Brien Engineering Company ("TJO"), under which TJO agreed to design, supply, deliver, warrant, and guarantee the Equipment. *Id.*

¶ 8.  H&M alleges that "[u]pon information and belief, TJO subcontracted with THTS to design, supply, deliver, warrant and guarantee the Equipment," and that, in turn, "THTS contracted with Atlantis to design, supply, deliver, warrant, and guarantee the Equipment."  *Id.* ¶¶ 9-10.  Both THTS and Atlantis are New York corporations.  *Id.* ¶¶ 2-3.

H&M also alleges that THTS "received and reviewed the contract specifications for the Equipment" and "provided and designated" them to Atlantis, and that Atlantis "received and reviewed the contract specifications and then designed and manufactured the Equipment for use on the Project."  *Id.* ¶¶ 11-13.  H&M alleges that THTS and Atlantis (collectively, "Defendants") then "prepared product data establishing the specifications for the Equipment" and "represented to Plaintiff and others that the Equipment, among other things, was suitable for the Project, complied with the applicable specifications for the Project, was properly designed, and would provide the required level of cooling capacity."  *Id.* ¶¶ 14-15.  H&M alleges that it "relied on the representations of Defendants" that the Equipment complied with the specifications.  *Id.* ¶ 16.

After it was installed, the Equipment failed.  H&M alleges that the Equipment "failed to perform as suitable heat exchanger equipment for the Project, failed to comply with the Project specifications, and failed to perform as represented by Defendants," and that in the performance of their duties, Defendants "should have discovered the defect by exercising reasonable care." *Id.* ¶¶ 18-19.  H&M further alleges that representatives of Atlantis visited the Project to review the Equipment, but did not provide an adequate remedy for its failure.  *Id.* ¶ 20.  As a result of the failure, H&M alleges that it incurred additional costs in investigating and evaluating the defective Equipment, as well as in procuring and installing suitable replacement equipment, which resulted in damages in excess of $500,000.  *Id.* ¶¶ 22-23.

On May 7, 2014, H&M filed the instant action alleging claims against Defendants for breach of implied warranty of fitness for a particular purpose (Count I), breach of express warranty (Count II), professional negligence (Count III), and negligent misrepresentation (Count IV)[1] ECF No. 1.  On June 16, 2014, THTS filed its Motion to Dismiss.  ECF No. 10.  The Court subsequently granted various consent motions by the parties requesting that the case be stayed during the parties' attempts to resolve the dispute through mediation.  *See* ECF Nos. 25, 27, 29.  The stay expired on January 18, 2015, *see* ECF No. 29, and Atlantis filed its Motion to Dismiss on January 21, 2015, ECF No. 31.  Both Motions are now ripe for adjudication.

## DISCUSSION

### I.  Legal Standard

A court must deny a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim where the complaint alleges enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  In assessing whether this standard has been met, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth.  *Iqbal*, 556 U.S. at 678.

---

[1] It appears that H&M separately pursued its claims against non-party subcontractor TJO in arbitration.  *See* Atlantis Mot. Dismiss at 3, ECF No. 31-1.

## II.  Choice of Law

Federal courts sitting in diversity apply the law of the state in which the court is located, including the forum state's choice of law rules. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007).  With regard to contract claims, unless the parties have chosen a different law, Maryland's Uniform Commercial Code governs claims for breach of warranty arising out of "transactions bearing an appropriate relation to this State."  Md. Code Ann., Com. Law § 1-301(b) (West 2015).  Although Defendants note that the Court could, in its discretion, decide to apply the law of New York (Defendants' place of incorporation) or Tennessee (H&M's place of incorporation), the parties appear to agree that the application of Maryland law to the contract claims is proper.  Among the factors to be considered in determining whether a breach of warranty claim bears an "appropriate relation" to the state are: the residence of the parties, the place of purchase, the place of performance, where the defective product was stored and maintained, and the place of injury.  *See Thornton v. Cessna Aircraft Co.*, 886 F.2d 85, 90 (4th Cir. 1989) (interpreting identical "appropriate relation" language in the South Carolina Commercial Code).  Although the parties in this case are incorporated in different states other than Maryland, the Equipment was installed in Maryland, the alleged defect in the Equipment arose in Maryland, and H&M's economic loss occurred in Maryland.  Thus, the Court concludes that Maryland law applies to the contract claims.

Maryland law also applies to the tort claims of negligence and negligent misrepresentation.  Under Maryland law, the tort doctrine of *lex loci delicti* provides that the substantive law to be applied in a tort case is that of the state in which the wrong occurred, in this case, Maryland.  *Philip Morris, Inc. v. Angeletti*, 752 A.2d 200, 230 (Md. 2000).

### III.  Breach of Implied Warranty of Fitness for Particular Use

H&M sufficiently states a claim for breach of the implied warranty of fitness for a particular use.  To establish such a claim, the plaintiff must show that: (1) the seller had reason to know the plaintiff's particular purpose for which goods are required; (2) the seller had reason to know that the plaintiff was relying on the seller's skill or judgment to furnish appropriate goods; and (3) the plaintiff, in fact, relied on the seller's skill and judgment.  Md. Code Ann., Com. Law § 2-315; *Ford Motor Co. v. Gen. Accident Ins. Co.*, 779 A.2d 362, 374-75 (Md. 2001).  Here, the Complaint alleges that Defendants received and reviewed the contract specifications for the Equipment, prepared product data establishing the specifications for the Equipment, and then represented to H&M and others that the Equipment was suitable for the Project.  Compl. ¶¶ 11-15.  H&M also alleges that it relied on these representations by Defendants, and that the Equipment was subsequently installed.  *Id.* ¶ 16-17.  Thus, H&M adequately alleges that there was an implied warranty of fitness for particular use.  The Complaint also alleges that Defendants breached the warranty by providing Equipment that did not meet the Project specifications, that H&M provided notice of the breach within a reasonable time after discovery,[2] and that H&M suffered damages as a result of the breach.  *Id.* ¶¶ 31-33.  The Court therefore concludes that H&M has pleaded sufficient factual allegations to state a claim for breach of the implied warranty.

Defendants argue that Count I fails because contractual privity is a required element of a claim for breach of the implied warranty of fitness for particular use, and H&M was not in

---

[2] Atlantis argues that H&M was required to provide more specific factual allegations regarding when and how H&M notified Defendants of the alleged breach.  *See* Atlantis's Mot. Dismiss at 7.  However, such heightened pleading is not required under Federal Rule of Civil Procedure 8.  H&M's allegation that it provided reasonable notice is sufficient at the Rule 12(b)(6) stage.

contractual privity with Defendants. THTS's Mot. Dismiss at 5. Although Maryland has expressly waived the vertical privity requirement for a claim of breach of the implied warranty of merchantability, Md. Code Ann., Com. Law § 2-314(1)(b), it has not done so for implied warranty of fitness for a particular purpose, *id.* § 2-315, which is the cause of action at issue here. *See Pulte Home Corp. v. Parex, Inc.*, 923 A.2d 971, 1000 (Md. 2007); *cf. Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312, 323 (D. Md. 1983) (concluding that the statutory provision eliminating the privity requirement for claims of breach of an implied warranty of merchantability does not apply beyond that particular warranty). However, in *Ford Motor Co. v. General Accident Insurance Co.*, 779 A.2d 362 (Md. 2001), the Maryland Court of Appeals concluded that for a claim for breach of implied warranty of fitness for a particular purpose, "the plaintiff only needs to prove that the buyer had a particular purpose known to seller, and . . . privity itself is not a required element that must be shown independently." *Id.* at 345. As discussed above, H&M alleges Defendants reviewed the contract specifications and represented to H&M that the Equipment met the specifications and was suitable for the Project. Thus, even without an allegation of privity, the Complaint sufficiently states a claim for breach of implied warranty of fitness for particular use.

Defendants also argue that H&M incorrectly alleges that they made representations to H&M regarding the suitability of the Equipment for the Project. THTS states that H&M "did not know of the identity or even the existence of THTS" until after the dispute arose, and that THTS never made representations guaranteeing that the Project would meet a particular purpose. THTS's Reply, at 1-2. Likewise, Atlantis argues that there was never any contact between H&M and Atlantis prior to the Equipment's failure, so it was impossible for H&M to have relied on any representations Atlantis is alleged to have made. Atlantis's Mot. Dismiss at 7. While these

assertions may prove to be true, they are questions of fact that are inappropriate for consideration at the Rule 12(b)(6) stage. As discussed above, taking the factual allegations in the Complaint as true and drawing all inferences in H&M's favor, the Court finds a plausible claim for breach of the implied warranty of fitness for particular use.

## IV. Breach of Express Warranty

Under Maryland law, an express warranty exists where there is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Md. Code Ann., Com. Law § 2-313(1)(a). H&M's claim for breach of express warranty will be dismissed because privity is a required element for such a claim. *See Copiers Typewriters*, 576 F. Supp. at 322-23 (finding that under Maryland law, when no personal injury is alleged, privity is a required element for an express warranty claim); *see also Pulte*, 923 A.2d at 1000 (noting Maryland's general rule that contractual privity is required for breach of express warranty actions absent personal injury). Based on the allegations in the Complaint, there is no contractual privity between H&M and Defendants. H&M's contract was solely with TJO, and it was TJO that, in turn, contracted with THTS, which contracted with Atlantis. *See* Compl. ¶¶ 8-10. Therefore, the Complaint fails to state a claim for breach of express warranty.

H&M argues that its express warranty claim should not be dismissed because, if given the benefit of discovery, H&M may be able to show that this case falls under one of Maryland's recognized exceptions to privity, including for third-party beneficiaries, equitable estoppel, assignment, agency relationships, or successors in interest. Opp. THTS's Mot. Dismiss at 13-15 & n.9. The Complaint, however, does not allege that H&M was a third-party beneficiary, assignee, agent, or successor in interest to the contract between TJO and THTS, or to the contract

between THTS and Atlantis.  Nor does it contain any factual allegations from which the Court
might infer the above.

Likewise, there are no allegations to support any possible estoppel theory at this stage.
Maryland law appears to recognize that a narrow exception to the privity requirement may be
made in express warranty cases where a defendant behaved in such a way that the plaintiff was
justified in believing that the defendant was the actual seller, or that it could rely on an express
warranty because the defendant provided warranty services to the plaintiff, despite the lack of
privity.  For example, in *Wood Products, Inc. v. CMI Corp.*, 651 F. Supp. 641 (D. Md. 1986), the
parties were found to be in contractual privity, but the court found that, even if they were not, the
defendant would have been estopped from denying privity both because the defendant played a
seller-like role during the negotiations, and because it had "tricked [the plaintiff] into believing
that [it] was entering into a contract with [the defendant]," thus engaging in "unconscionable"
conduct that was "precisely" the reason the doctrine of estoppel was created.  *Id.* at 649-50.  In
*Addressograph-Multigraph Corp. v. Zink*, 329 A.2d 28 (Md. 1974), the court held that the
defendant was estopped from asserting the lack of privity as a defense because the defendant had
made various service calls without charge over the course of a year and a half, leading the
plaintiff to believe that it had, and could rely on, an express warranty.  *Id.* at 31.

Here, the Complaint does not allege any facts from which the Court could similarly infer
that H&M either believed Defendants to be parties with whom they were contracting, or that
Defendants provided H&M with warranty services, despite the lack of privity.  H&M argues that
facts asserted in a supplemental affidavit to its Opposition to THTS's Motion to Dismiss,
Campbell Aff., ECF. No. 14-1, could provide additional support for such an inference, and
hypothesizes that it would uncover even further information in discovery, but on a Rule 12(b)(6)

motion, the Court is limited to examining the facts alleged within the four corners of the Complaint. *See* Fed. R. Civ. P. 12(d). The Court therefore dismisses H&M's claim for breach of express warranty. The claim is dismissed without prejudice in order to account for the possibility that H&M may later seek leave to pursue the claim on the basis of information uncovered during discovery that supports one of the exceptions to the privity requirement.

## V. Professional Negligence

H&M also asserts a claim for "professional negligence"[3] based on Defendants' alleged failure to exercise reasonable care in providing engineering and other specialized services in reviewing the specifications and designing the Equipment. Compl. ¶ 7. To state a claim for negligence under Maryland law, a plaintiff must plead: (1) the existence of a duty to protect the plaintiff from injury; (2) that the defendant breached that duty; (3) that the plaintiff suffered actual injury or loss; and (4) that the loss or injury proximately resulted from the defendant's breach. *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 270-71 (Md. 2007) (internal citation and quotation marks omitted). Defendants argue that H&M's negligence claim should be dismissed because the Complaint fails to establish that Defendants owed H&M an independent duty of care.

Whether a legal duty exists between parties is a question of law. *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1, 9 (Md. 2013). Although there is no precise formula

---

[3] In its Opposition to THTS's Motion to Dismiss, H&M states that the elements for professional negligence are the same as those for a general negligence claim, Opp. THTS's Mot. Dismiss at 17. It appears that H&M uses the term "professional negligence" to reference the allegation that Defendants were negligent in the rendering of their professional services, and not because it intends to bring, for example, a malpractice claim under § 3-2C-01 of the Courts and Judicial Proceedings Article of the Maryland Code for a "licensed professional's alleged negligent act or omission in rendering professional services, within the scope of the professional's license, permit, or certificate." Md. Code Ann., Cts. & Jud. Proc. § 3-2C-01(b). In their Motions, Defendants also treat Count III as a common law tort claim for negligence. Thus, the Court will also do so here.

for determining the existence of a tort duty between parties, Maryland courts consider as key factors (1) the nature of the harm likely to result from a failure to exercise due care and (2) the relationship between the parties. *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 760-61 (Md. 1985); *100 Inv. Ltd.*, 60 A.3d at 10-11. In cases where the failure to exercise due care creates a risk of economic loss only, "courts have generally required an intimate nexus between the parties," which "is satisfied by contractual privity or its equivalent." *Jacques*, 515 A.2d at 760-61. In this case, the harm was economic in nature, but, as discussed above, the parties were not in contractual privity. Therefore, the Court must examine the parties' relationship to determine whether the Complaint plausibly alleges that an equivalent intimate nexus existed between H&M and Defendants to establish a basis for tort liability.

To assess whether such an intimate nexus exists, Maryland courts consider whether (1) the alleged tortfeasor was aware that its work was to be used for a particular purpose; (2) there was a known party that was intended to rely upon that work; and (3) there was some conduct on the part of the alleged tortfeasor linking it to the party showing that it understood that party's reliance upon its work. *100 Inv. Ltd.*, 60 A.3d at 15-16; *Walpert, Smullian & Blumenthal, P.A. v. Katz*, 762 A.2d 582, 606-09 (Md. 2000). In *Walpert*, the Maryland Court of Appeals considered whether an accounting firm owed a duty of care to a third party with whom it had no contractual relationship. *Id.* at 583. There, an accounting firm prepared an audit report in a negligent manner, resulting in economic loss to a third party which relied upon the report. *Id.* at 583-84. The court concluded that summary judgment challenging the existence of a tort duty was properly denied when there was evidence that the accounting firm was aware that its report would be used by the third party for a particular purpose, that the third party relied upon it, and

the accounting firm was aware of that reliance based on the fact that it directly provided a copy of its audit to the third party. *Id.* at 608-09.

In this case, the Complaint similarly alleges that Defendants received and reviewed the contract specifications for the Equipment, that Atlantis designed the Equipment according to those specifications, and that Defendants then prepared product data establishing the specifications for the Equipment and represented to H&M that the Equipment would provide the required level of cooling capacity. Compl. ¶¶ 11-15. Based on these allegations, it is plausible that, as in *Walpert*, Defendants knew that its professional services would be used for a particular purpose, H&M relied on those services, and Defendants knew that H&M would rely on their services based on their exchange of the Projects specifications and the representations Defendants made to H&M. The Court therefore concludes that H&M sufficiently alleges the existence of an intimate nexus, even in the absence of contractual privity. *See Walpert*, 762 A.2d at 608-09; *Superior Bank, F.S.B. v. Tandem Nat'l Mortg. Inc.*, 197 F. Supp. 2d 298, 320-21 (D. Md. 2000) (finding the duty element properly pleaded in a negligent misrepresentation claim where parties lacked contractual privity but the bank alleged that defendant mortgage brokers had reason to know that it would rely on false information defendants provided about various mortgage loans); *see also Village of Cross Keys, Inc. v. U.S. Gypsum Co.*, 556 A.2d 1126, 1134-35 (Md. 1989) (stating that a manufacturer could potentially owe a tort duty to developers and engineers who may be expected to rely upon erroneous information in its publication about its product, but finding no duty in this specific case because the plaintiff had not actually used the manufacturer's product).

Defendants take issue with H&M's allegation that "Defendants owed a duty to exercise that degree of care and skill exercised by reasonable and competent engineers in the design and

compliance review of the Equipment." Compl. ¶ 42. Specifically, Defendants argue that THTS is not, in fact, a provider of engineering services, that the Complaint fails to allege that either Defendant offered professional engineering services, and that, therefore, the Complaint lacks "any facts justifying any reasonable reliance by Plaintiff upon the status of Atlantis and THTS as a[] professional engineer." Atlantis's Mot. Dismiss at 10-11; THTS's Mot. Dismiss at 11-12. Maryland courts have considered the nature of the defendant's business to be an "*additional* factor relevant to the determination of whether to recognize the existence of a tort duty" and generally recognize that "in those occupations requiring peculiar skill, a tort duty to act with reasonable care will be imposed on those who hold themselves out as possessing the requisite skill." *Jacques*, 515 A.2d at 763 (emphasis added). But the "intimate nexus" analysis used to determine whether there is a duty of care in cases involving economic loss does not require a finding that the defendant had a certain professional expertise. *See 100 Inv. Ltd.*, 60 A.3d at 15-16; *Jacques*, 515 A.2d at 759-61, 763. As discussed above, H&M has sufficiently alleged that Defendants knew of the particular purpose for their services, were aware that H&M would rely on their skills and expertise in providing those services that were responsive to the Project's needs, and that H&M did so rely. Regardless of whether Defendants' skills and expertise would qualify as engineering skills, the Complaint adequately alleges that Defendants owed a duty of care to H&M in reviewing the Project specifications and designing and preparing the Equipment. Thus, H&M properly alleges a tort duty, and the motions to dismiss the negligence claim are denied.

## VI. Negligent Misrepresentation

The elements of a negligent misrepresentation claim are that (1) the defendant, owing a duty to the plaintiff, negligently asserts a false statement, (2) intending for the statement to be

acted upon, (3) and knowing the plaintiff will rely on the statement; and that (4) the plaintiff justifiably takes action in reliance and (5) suffers damage as a proximate cause. *Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534, 539 (Md. 1982).   H&M alleges that Defendants negligently made false representations regarding the suitability of the Equipment, knowing that H&M would rely on those statements, and that H&M relied on those statements and suffered economic damages. Compl. ¶¶ 15-23, 47-52. As with Count III, Defendants' only argument is that the claim should be dismissed because H&M fails to properly allege the existence of a tort duty. However, as discussed in the previous section, the Court finds the element of duty properly pleaded. *See Walpert*, 762 A.2d at 648 (noting that the plaintiff asserted claims of both negligence and negligent misrepresentation); *Superior Bank*, 197 F. Supp. 2d at 320-21 (finding the duty element properly pleaded in a negligent misrepresentation claim).     Therefore, Defendants' motions to dismiss Count IV are denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are DENIED as to the breach of implied warranty of fitness for a particular use claim (Count I), negligence claim (Count III), and negligent misrepresentation claim (Count IV), and GRANTED as to the breach of express warranty claim (Count II). The Complaint's breach of express warrant claim (Count II) is DISMISSED without prejudice. A separate Order follows.

Date: March 30, 2015

THEODORE D. CHUANG
United States District Judge